UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| REDA ABDELAAL and REHAN MOHAMAD, on behalf of minor H.A., <br><br> Plaintiffs, <br><br> v. <br><br> JEFFERSON PARISH SCHOOL BOARD; SHONNETTE FLAKES; LAKEYIA MCGHIE; ZEDRA LOUIS; VIJAYSHRI KATYAYANI; JAMES GRAY; KATRINA TORRADO; DOE DEFENDANTS 1-10, INCLUDING INDIVIDUALS A, B, C, D, E, F, G, H AND I, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 2:25-cv-1908 |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiffs Reda Abdelaal and Rehan Mohamad on behalf of their minor son, H.A, who bring this suit as a result of the physical and emotional abuse Defendants perpetuated, both directly and by failing to properly supervise its employees.

### INTRODUCTION

1.     Reda Abdelaal and Rehan Mohamad's son, H.A., is a 15-year-old special education student in the Jefferson Parish School System.

2.     H.A. is deaf, nonverbal, and suffers from severe disabilities, including cerebral palsy and seizures, which leave him wheelchair-bound and in need of increased supervision.

3.      H.A. was assigned to a special needs classroom at Bonnabel High School where he experienced repeated, daily physical and emotional abuse by several Jefferson Parish School System employees.

4.      Some examples include physically hitting H.A., kicking H.A.'s wheelchair, using classmates to change H.A.'s diaper, verbally berating H.A., and denying H.A. meals.

5.      Bonnabel High School officials failed to provide the necessary training and oversight to prevent these abuses.

6.      H.A.'s mental and physical state has severely deteriorated because of this abuse.

7.      Accordingly, Plaintiffs bring this suit.

## PARTIES

### *Plaintiffs*

8.      Plaintiff Reda Abdelaal is of the full age of majority and is domiciled in Jefferson Parish, Louisiana. He brings this lawsuit to enforce his rights and on behalf of his minor son, H.A.

9.      Plaintiff Rehan Mohamad is of the full age of majority and is domiciled in Jefferson Parish, Louisiana. She brings this lawsuit to enforce her rights and on behalf of her minor son, H.A.

### *Defendants*

10.      Defendant Jefferson Parish School Board is the juridical entity which has administrative control over schools and employees in the Jefferson Parish School District, including Alfred Bonnabel Magnet High School.

11.      Defendant Shonnette Flakes is, upon information and belief, a person of the full age of majority domiciled in Jefferson Parish, Louisiana. Ms. Flakes was, at all times relevant to this Complaint, an employee of Jefferson Parish Schools.

12.     Defendant Vijayshri Katyayani is, upon information and belief, a person of the full age of majority domiciled in Jefferson Parish, Louisiana. Ms. Katyayani was, at all times relevant to this Complaint, an employee of Jefferson Parish Schools.

13.     Defendant Zedra Louis is, upon information and belief, a person of the full age of majority domiciled in Jefferson Parish, Louisiana. Ms. Louis was, at all times relevant to this Complaint, an employee of Jefferson Parish Schools.

14.     Defendant Lekeyia McGhie is, upon information and belief, a person of the full age of majority domiciled in Jefferson Parish, Louisiana. Ms. McGhie was, at all times relevant to this Complaint, an employee of Jefferson Parish Schools.

15.     Defendant Dr. James Gray is, upon information and belief, a person of the full age of majority domiciled in Jefferson Parish, Louisiana. Dr. Gray is the Superintendent of the Jefferson Parish School District. He is sued in his official capacity.

16.     Defendant Katrina Torrado is, , upon information and belief, a person of the full age of majority domiciled in Jefferson Parish, Louisiana. Ms. Torrado is the principal of Bonnabel High School. She is sued in her official capacity.

17.     Doe Defendants 1-10 are individuals or entities not currently known to Plaintiff who may have participated in, allowed, or otherwise perpetuated the damages and other claims alleged herein.

18.     Individuals A, B, C, D, E, F, G, H, and I are persons of the full age of majority. They were each-, at all times relevant to this Complaint, an employee of Jefferson Parish Schools.

## VENUE AND JURISDICTION

19.     Venue is proper pursuant to 28 U.S.C. § 1391 in that Defendants are subject to personal jurisdiction in the Eastern District of Louisiana. The Jefferson Parish School Board is situated in the Eastern District of Louisiana and a substantial part of the events giving rise to the claims occurred in the Eastern District of Louisiana. All parties are, upon information and belief, domiciled in the Eastern District of Louisiana.

20.     This court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, in that Plaintiff's claims arise under the laws of the United States. This court has supplemental jurisdiction over Plaintiff's claims arising from state law in accordance with 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

21.     Plaintiffs Reda Abdelaal and Rehan Mohamad are parents to 15-year-old H.A., a special education student at Alfred Bonnabel Magnet High School ("Bonnabel"), an entity under control of the Jefferson Parish School Board.

22.     H.A. is wheelchair-bound and suffers from severe disabilities, including cerebral palsy, autism, a seizure disorder, chromosomal deletion, and verbal communication limitations. H.A. is also deaf with bilateral cochlear implants and cochlear-implant processors.

23.     H.A. has an Individualized Education Plan which mandates the support he needs at Bonnabel, including constant supervision by a 1:1 paraprofessional.

24.     H.A.'s parent specifically chose to send him to Bonnabel because of its purported accommodations for his special needs. For instance, when touring the facility H.A.'s parents were shown a designated place where the paraprofessional could change H.A.'s clothes in private.

25. These accommodations were especially important to H.A.'s parents as he experienced abuse at his previous school, including a teacher hitting him with a cane and exposure to fire ant bites.

26. But shortly into his tenure as a Bonnabel student, H.A.'s parents noticed that he had bruising which appeared to be consistent with the use of physical restraints. H.A. would routinely come home with those and other mysterious bruises which were not present when he left for school each morning.

27. H.A. would also come home having noticeably chewed on his clothes buttons (a known reaction when not being supervised) and would be covered in saliva.

28. The special education classroom to which H.A. was assigned is equipped with at least two surveillance cameras.

29. H.A.'s parents requested to see video of the classroom and were horrified to discover that H.A.'s teachers and paraprofessionals were physically and emotionally abusing him.

30. The school only showed H.A.'s parents two days of camera footage – from September 19 and 24, 2024 – which revealed the disturbing abuse.

31. Abuses by employees caught on camera on those two days included:

   a. Manipulating H.A.'s own hand to hit him in the head while saying "Hit your own self;"

   b. Kicking and pushing H.A. in the head;

   c. Using other minor special education students to assist changing H.A.'s diaper, thus exposing H.A.'s genitalia;

   d. Forcefully strapping H.A. into his wheelchair;

   e. Shoving H.A.'s wheelchair violently into tables and other hard objects;

    f.      Verbal harassment, such as saying "I want to pop him;"

    g.      Trapping H.A.'s wheelchair against the wall with a table; and

    h.      Pulling H.A.'s hair.

32.    In addition, H.A. was routinely denied breakfast and lunch and had his food thrown away in the trash.

33.    Hitting H.A. with his own hand is particularly perverse, as he is nonverbal and uses his hands as a primary form of communication.

34.    Each of these instances of abuse occurred in the presence of multiple Jefferson Parish Schools employees.

35.    Upon information and belief, each of the direct abusers and those employees who witnessed abuse are mandatory reporters.[1]

36.    Individuals who directly abused H.A. and/or failed to report the witnessed abuse include, but are not necessarily limited to, the following who are depicted in screenshots from surveillance camera footage obtained through a Family Educational Rights and Privacy Act (FERPA) request:

37.    Individual A:

---

[1] See Louisiana Children's Code Art. 603, *et seq.*



38.    Individual B:



39.    Individual C:



40.    Individual D:



41.     Individual E:[2]



42.     Individual F:



---

[2] Individual E may be the same as Individual D; it is difficult to ascertain from the video. They are listed separately out of an abundance of caution.

43.    Individual G:



44.    Individual H:



45.     Individual I:



46.     Upon information and belief, the individuals depicted in the above screenshots include Defendants Shonnette Flakes, Vijayshri Katyayani, Zedra Louis, and Lakeyia McGhie.

47.     Individuals A, B, C, and F directly participated in physical and emotional abuse, such as pushing and shoving H.A., and witnessed such abuse by others.

48.     Individuals D, E, G, H, and I at least witnessed physical and emotional abuse and may have participated directly.

49.     All of the above individuals are, upon information and belief, mandatory reporters.

50.     The camera footage provided to H.A.'s parents was taken September 19 and 24, 2024, but upon information and belief the abuses were not limited to those days.

51.     Defendants also engaged in falsification of educational records to cover up their abuse.

52.     Specifically, Defendants used a "logbook" that they would keep notes about H.A.'s day.

53.     The logbook would be kept at school during the day, and then sent home with H.A. so as to communicate to H.A.'s parents the events of the day, but the entries in the book were fabricated based on the video evidence.

54.     After learning of the specific instances of abuse depicted on video, H.A.'s parents reviewed H.A.'s logbook, which is filled out by special education staff. H.A.'s parents discovered that the logbook misrepresented the truth with such statements as "[H.A.] had a really good day. He was very active today & smiling all day" and "[H.A.] been happy all day & active."

55.     The log also misrepresented what H.A. supposedly ate for lunch and breakfast, but in fact H.A. was not properly fed, if provided food at all.

56.     Each of these actions are appalling and illegal in their own right, but several of the incidents – such as publicly exposing H.A.'s genitalia – are particularly offensive to H.A.'s Muslim religion which specifically forbids such behavior.

57.     Other students who do not have H.A.'s disabilities were treated more favorably than H.A.

58.     Upon information and belief, Bonnabel administration held a conference with at least one suspected abuser[3] on September 30, 2024.

59.     At that conference, the suspected abuser was accused of having "improperly restrained a severe profound student during that student's changing time" in two separate incidents.

---

[3] The particular individual's identity is redacted from documents in Plaintiffs' possession.

60.     The suspected abuser was further accused of having "initiated a plan of collusion for herself and the other staff members 'To get their stories straight' following inquiries into the changing."

61.     On October 4, 2024, an employee[4] sent an email explaining that they had been provided a "conference form of alleged series of events" and that "as a mandate reporter I should have reported these actions to my supervisor and DSFS."

62.     The employee further stated that they did speak to other employees regarding a paraprofessional who was "not doing a good job" and that "No one ever came in the classroom and had a training on how to properly change" H.A.

63.     In another September 30, 2024, conference, an employee[5] was accused of "inflict[ing] physical and mental harm on her one to one severe profound student through the following actions: Kicking the wheelchair repeatedly, using his hand to hit himself repeatedly, pinching the students neck, shoving him into the changing table while in his wheelchair, pushing his head down towards a table, restraining the student in his wheelchair under the table so that he is unable to move, speaking negatively about the student and his family repeatedly."

64.     According letters, Jefferson Parish Schools Superintendent Dr. James Gray, was informed of the abuse by one employee on September 30, 2024, and a separate employee on October 2, 2024.

65.     On October 4, 2024, Jefferson Parish Schools informed one of the individuals involved in the abuse that they were temporarily suspended, retroactive to October 1, 2024.

---

[4] The particular individual's identity is redacted from documents in Plaintiffs' possession.
[5] The particular individual's identity is redacted from documents in Plaintiffs' possession.

66.     On October 7, 2024, Jefferson Parish Schools informed another one of the individuals involved in the abuse that they were temporarily suspended, retroactive to October 3, 2024.

67.     Jefferson Parish Schools officials reported the abuse depicted on the videos to the Jefferson Parish Sheriff's Office.

68.     Per Jefferson Parish Schools policy, the camera footage cannot be viewed, even for supervisory purposes, except when requested in writing by an eligible person.

69.     Accordingly, the report would not have happened had H.A.'s parents not demanded to watch the video.

70.     All mandatory reporters who view a recording that shows a violation of Louisiana or federal law is required to make a report, per state law and Jefferson Parish Schools policy.

71.     Jefferson Parish Schools retains videos for a period of 30 days, per Louisiana law and district policy.

72.     The effect of this abuse on H.A. has been profound.

73.     H.A. is now terrified to leave his home and is visibly frightened of school buses.

74.     H.A.'s mental state has deteriorated and he has been prescribed medication to treat his trauma.

75.     H.A.'s parents met with administrators in an attempt to correct these issues, but ultimately made the difficult decision (with consultation with H.A.'s doctors) to home school H.A. after it because clear that H.A.'s safety could not be guaranteed in the special education classroom.

76.     As a result, H.A. and his parents will have to manage a lack of socialization in addition to the other issues.

77.     Upon information and belief, at least one individual has been arrested as a result of these incidents of abuse.

## CLAIMS FOR RELIEF

### *Count 1 –* **Americans with Disabilities Act and Rehabilitation Act**
*Against Defendant Jefferson Parish School Board*

78.     Plaintiffs reallege and incorporate each and every foregoing paragraph.

79.     The Americans with Disabilities Act provides, in part, that provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[6]

80.     Section 504 of the Rehabilitation Act of 1973 similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[7]

81.     Such claims can take the form of either a "conscious discrimination" or a "failure to accommodate" theory.[8]

82.     Conscious discrimination has been found "where a teacher abuses a particular, highly disabled student but not other less disabled students, an ADA claim is potentially viable."[9]

83.     Here, the video shows that H.A. suffers from uniquely severe disabilities compared to his classmates.

---

[6] Title II, 42 U.S.C. § 12132.
[7] 29 U.S.C. § 794.
[8] *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1033 (5th Cir. 2022).
[9] *A.F. v. St. Tammany Par. Sch. Bd.*, No. 23-7426, 2025 U.S. Dist. LEXIS 79753, at *38 (E.D. La. Apr. 25, 2025).

84.     The video also shows that H.A. was the only student who had to endure physical and emotional abuse.

85.     Discrimination on the basis of a failure to accommodate has been found where a disability is "apparent," but a defendant fails to take necessary action to accommodate.[10]

86.     Here, H.A.'s disabilities are obvious and, to the degree any particular aspect of his disabilities may not be apparent, are spelled out in his IEP.

87.     Despite this, Defendants failed to meet his basic needs as required under his IEP and through observation.

88.     Defendant Jefferson Parish School Board receives federal funding.

### Count 2 – Louisiana Human Rights Act (La. R.S. § 51:2231, *et seq*)
#### *Against Defendant Jefferson Parish School Board*

89.     Plaintiffs reallege and incorporate each and every foregoing paragraph.

90.     The Louisiana Human Rights Act (LHRA) is modelled after the ADA and courts "look[] to the ADA" when "interpreting the scope of the LHRA."[11]

91.     Therefore, Defendants are liable under the same theories as described herein under Count 1.

### Count 3 – Constitutional Claim, including *Monell*, Failure to Properly Hire, Train, and Supervise, and Bystander Liability
#### *Against Individual Defendants, Defendant Jefferson Parish School Board and Any Supervisory Defendants*

92.     Plaintiffs reallege and incorporate each and every foregoing paragraph.

93.     Defendants' physical abuse and restraint of H.A. constituted unreasonable seizures forbidden by the Fourth Amendment to the United States Constitution.

---

[10] *J.W. v. Paley*, 81 F.4th 440, 450 (5th Cir. 2023).
[11] *Cougle v. Berkshire Life Ins. Co. of Am.*, 429 F. Supp. 3d 208, 216 (E.D. La. 2019).

94.    Defendants' abuses of H.A., including but not limited to exposing his genitals to other students and directing other students to change his diapers, constituted conscience-shocking behavior in violation of the Fourteenth Amendment to the United States Constitution.

95.    Defendants' falsification of evidence (the logbook) allowed Defendants to continue to restrain and abuse H.A. without parental intervention, depriving him of liberty and violating due process of law.[12]

96.    Liability under § 1983 for failure to train or supervise is shown when "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[13]

97.    Employees complained during the investigation that their co-workers were "not doing a good job" and that "No one ever came in the classroom and had a training on how to properly change" H.A.

98.    Based on the video evidence, several Employee Defendants lacked the necessary skills to work in the special education classroom beyond just the changing procedures, either due to the failure to train or because they lacked the necessary prerequisites at the time of hiring.

99.    At least one Employee Defendant (Defendant Katyayani) lacked special education certification and was previously fired from a Texas school system.

100.    Jefferson Parish Schools and any other Defendants tasked with supervision failed to perform basic supervision which could have caught this abuse sooner.

---

[12] See *Mooney v. Holohan*, 294 US 103 (1935).
[13] *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998).

101.    One non-exclusive example is that Jefferson Parish Schools maintains a camera policy which does not allow supervisors to view camera footage in the absence of a complaint.

102.    Jefferson Parish Schools lulled the parents into a false sense of security by visibly placing video cameras in the classroom, but then not actually monitoring the cameras.

103.    Defendants further failed to act immediately to remove alleged abusers from the classroom.

104.    The individual defendants who witnessed abuse and did not act to prevent it despite having an opportunity to do so are further liable on a bystander liability theory of relief.[14]

### *Count 4* – **Assault and Battery**
*Against Employee Defendants*

105.    Plaintiffs reallege and incorporate each and every foregoing paragraph.

106.    Various Employee Defendants committed assault and battery through the non-consensual and unnecessary touching of H.A.'s body, including but not limited to shoving him, manipulating his own hand to hit him in the face, and directing other students to touch him.

107.    None of these actions were warranted under the circumstances.

### *Count 5* – **Federal and State Law Conspiracy**
*Against Employee Defendants*

108.    Plaintiffs reallege and incorporate each and every foregoing paragraph.

---

[14] *Imani v. Baton Rouge,* R. Doc. 226 (M.D. La., Aug. 14, 2020) ("[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995) (citations omitted). "[A]n officer may be liable under § 1983 under [this] theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.' " Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted).")

109.    A § 1983 conspiracy involves "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[15]

110.    Under Louisiana law, "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."[16]

111.    Here, the Employee Defendants entered into a conspiracy when the acted together to violate H.A.'s rights and, further, in attempting to cover-up their actions.

112.    In one particular incident, one Employee Defendant "initiated a plan of collusion for herself and the other staff members 'to get their stories straight' following inquiring into the changing," according to the September 30 Conference Form.

### *Count 6* – Fraud and Falsification of an Educational Record
*Against Employee Defendants*

113.    Plaintiffs reallege and incorporate each and every foregoing paragraph.

114.    Under Louisiana law, "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may also result from silence or inaction."[17]

115.    Here, H.A.'s parents relied on Defendants to provide observations and insights into H.A.'s behavior at school, primarily through entries in a daily logbook.

116.    The daily logbook is a requirement under school policy and H.A.'s IEP.

---

[15] *Pfannstiel v. Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).
[16] La. Civ. Code art. 2324.
[17] La. Civ. Code art. 1953.

117.    H.A.'s parents believed the contents of that logbook until confronted with evidence that it was not telling the whole story, such as ignoring behavior like H.A. chewing off his shirt buttons.

118.    Entries in the logbook from the dates captured in security footage show direct misrepresentations of what happened to H.A.

119.    If Defendants did not intentionally misrepresent the truth in the logbook, the abuse could have been uncovered earlier.

### *Count 7* – Negligence and Negligent Infliction of Emotional Distress
*Against All Defendants*

120.    Plaintiffs reallege and incorporate each and every foregoing paragraph.

121.    To prove negligence, a plaintiff must show that (1) the conduct in question was the cause-in-fact of the resulting harm; (2) the defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of protection afforded by the duty breached.[18]

122.    All Defendants owed a duty of care to H.A. through their positions as teachers, paraprofessionals, and education administrators.

123.    The Employee Defendants breached that duty of care, causing harm to H.A., when the participated in and/or failed to prevent or report physical and emotional abuse.

124.    Defendant Jefferson Parish School Board and any Defendants working in a supervisory capacity breached their duty by failing to properly hire, train, and supervise staff. This allowed the abuse to occur and to continue before H.A.'s parents intervened.

---

[18] *Stroik v. Ponseti*, 699 So.2d 1072, 1078 (La. 1997).

### *Count 8 –* **Vicarious Liability**
*Against Defendant Jefferson Parish School Board and Any Supervisory Defendants*

125.    Plaintiffs reallege and incorporate each and every foregoing paragraph.

126.    Defendant Jefferson Parish School Board and any Defendants in a supervisory role are liable to Plaintiffs for the constitutional violations as well as the negligent and intentional acts and omissions of those under their direction and control pursuant to Louisiana Civil Code article 2320 and the doctrine of *respondeat superior*.[19]

### *Count 9 –* **Indemnity**
*Against Defendant Jefferson Parish School Board*

127.    Plaintiffs reallege and incorporate each and every foregoing paragraph.

128.    Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for while employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

129.    Defendant Jefferson Parish School Board operates the Jefferson Parish school district and was responsible for the hiring, training, and discipline of its employees.

130.    While committing the misconduct alleged herein, Employee Defendants were employees of the Jefferson Parish School Board, were present on Jefferson Parish Schools property, and were performing work within the scope of their employment (i.e. supervising and instructing students).

131.    The Jefferson Parish School Board is therefore obligated by Louisiana statute to pay any judgment entered against its employees.

---

[19] See, e.g., *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023); *Upton v. Vicknair*, 21-cv-407, R. Doc. 157 (E.D. La. Feb. 20, 2024) (granting plaintiff's motion for summary judgment on respondeat superior liability when defendant's employee had opportunity to commit torts due to their job, even though employer condemned conduct and fired employee).

## RELIEF REQUESTED

132.    Wherefore Plaintiffs request judgment to be entered against Defendants and that the Court grant the following:

    a.    Declaratory relief;

    b.    Judgment against Defendants for Plaintiffs' asserted causes of action;

    c.    Award of compensatory damages;

    d.    Award of special and punitive damages;

    e.    Award of costs and attorneys fees;

    f.    Order such other and further relief at law or in equity to which Plaintiff may be justly entitled.

133.    Plaintiffs further demand a trial by jury.

Respectfully Submitted,

*/s/ David Lanser*
William Most, 36914
David Lanser, 37764
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Telephone: (504) 509-5023
Telephone: (504) 533-4521
Fax: (504) 414-6400
williammost@gmail.com
david.lanser@gmail.com

*Counsel for Plaintiffs, Reda Abdelaal and Rehan Mohamad, on behalf of minor H.A.*